UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
:
KELVIN BARNES                              :
6817 Mountain Lake Place                   :
Capital Heights, Maryland                  :
:
Plaintiff,              :
:
v.                                          :          Case No.: 1:06-cv-00005 (HHK)
:
ALBERTO GONZALES                           :
In his official capacity                   :
As Attorney General               :
DEPARTMENT OF JUSTICE                       :
950 Pennsylvania Avenue                     :
Washington, D.C. 20530-0001                :
:
Defendant.              :
_____ :

REPORT OF LOCAL RULE 16.3 CONFERENCE

Pursuant to the rules of this Court, counsel in the above-styled matter submit this report regarding the issues discussed at their LCvR 16.3 Conference.  A proposed Scheduling Order incorporating the parties' report is attached.

I.      STATEMENT OF THE CASE

A.  Plaintiff's Statement

Plaintiff is employed by Defendant, Alberto Gonzales, in his official capacity as Attorney General for the United States Department of Justice.  Plaintiff alleges that he suffered unlawful, discriminatory, and adverse treatment when Defendant denied Plaintiff the opportunity to work morning overtime although Plaintiff is qualified to work morning overtime.  Defendant offered the opportunity to work morning overtime to employees outside Plaintiff's protected class.

Plaintiff also alleges that Defendant provided Plaintiff with less favorable terms and conditions of employment than employees outside of his protected class based on his membership in a protected class, when Defendant provided individuals outside of Plaintiff's protected class with a locker room and break room outside the cell block "bubble", private restroom, spacious eating area with: a kitchenette; vending machine; and ample seating, carpeted floors, sanitary conditions, break area with functional plasma television, and microwave. Defendant provided Plaintiff and persons inside his protected class with eating and locker facilities in or just outside cell block "bubble", eating area with: small table with four (4) chairs; a leaky and oft-broken refrigerator; and no seating, bare floors, unhygienic and/or filthy conditions, eating facility with no functional television, and no microwave.

In addition, Plaintiff alleges that eating area that him and persons inside his protected class use are constantly occupied by Department of Corrections employees who loiter and sleep in the area.

B.  Defendant's Statement

There was no discrimination against plaintiff in any of defendant's actions,  and there are legitimate non-discriminatory reasons for all of defendant's actions.

In 2004 new Guidelines governing overtime were instituted.   The Guidelines are meant to ensure a safe and secure workplace and to more equally distribute the available overtime without taxing a specific group with hours that severely impacted their work performance and personal interaction with others.  Following the staffing and security measures outlined in the Guidelines, some DEOs were initially and temporarily restricted from voluntarily signing up for

what is generally referred to as "the morning overtime shift" from 6:30 a.m. to 10:30 a.m. This temporary limitation on one form of overtime was because of the obligatory four-hour nature of the shift. Previously, the DEOs, who were scheduled to begin their shifts at 10:30 a.m., had been allowed to show up or sign up to work from 6:30 a.m. until their regular shift started at 10:30 a.m. However, the DEOs, who showed up to work this morning shift, would consequently work twelve-hour or longer days. The Supervisory Deputy United States Marshal, noted that allowing DEOs to work as many hours as desired, put them into a position of making mistakes and security lapses because of the enormous hours each was working. The Guidelines limited twelve-hour workdays because of the demonstrated negative consequences arising from working long shifts. These consequences include, but are not limited to, risk to the security and safety of prisoners and USMS personnel, negative employee conduct and performance issues, and budget concerns stemming from excessive overtime. Those USMS employees, who were regularly scheduled to begin work at 8:30 a.m., were not similarly restricted because, for them, working overtime in the morning only amounted to two hours (6:30 a.m. to 8:30 a.m.) of overtime, or a ten-hour work day.

Plaintiff had equitable opportunities to work overtime. Specifically, Complainant worked over 1,176 hours of overtime, earning $37,548.34 in Fiscal Year 2004. Additionally, in the 2005 fiscal year, spanning from October 2004 until September 2005, Complainant worked 952.5 hours of overtime, earning $31,565.97. The Guidelines afforded all employees an opportunity to work an average of two-hours of overtime a day. This two-hour-a-day policy is flexible and helps to ensure a safe and secure workplace, distribute overtime opportunities fairly among all staff, thus limiting negative conduct, performance, and unscheduled leave patterns.

The USMS does not allocate space to DEOs or DUSMs for use within the Courthouse. Instead, the Chief Judge performs this task. The Marshals Service has made repeated requests to the Chief Judge for expanded and improved space.

Plaintiff cannot establish an inference of discrimination because the DEO locker rooms are not substantially inferior to the similarly-situated DUSMs' locker rooms. In fact, in many ways, the DEO locker room can be considered superior to that of the DUSMs.

As compared to the DUSM locker rooms, the DEO locker rooms are larger, more spacious, contain larger lockers, and are more convenient to their duty station. The male and female DEO locker rooms are located near their workspace within the isolation cellblocks. In contrast, the male and female DUSM locker rooms are inconveniently located outside the cellblock, through security, and down a public Courthouse hallway. The 19 DEOs have more space within their locker rooms, as compared to the very limited space that the 112 DUSMs have to share. A majority of the DEOs have lockers that are nearly twice the size of the DUSM lockers. Neither the DEO nor DUSM locker space is optimal. However, no discrimination can be inferred where the DEO locker space is not substantially inferior to that of the DUSMs and is, in many ways, superior to the DUSM locker rooms.

Likewise, Complainant cannot show any harm where he had equal access to the one USMS-designated break room. The room is accessible by a key code that all employees may obtain. DEOs and DUSMs have equal access to the break room and DEOs often use the room for eating and taking breaks.


II. RULE 16.3 REPORT

1.    Status of Dispositive Motions: Plaintiff does not believe that this action may be resolved

by dispositive motion following discovery.   Defendant believes  that this action can be resolved by dispositive motion, possibly before discovery.

2.      Amended Pleadings:  The Plaintiff does not at this time anticipate that it will be necessary to join third parties or amend the pleadings.  Defendant agrees

3.      Assignment to Magistrate Judge: The parties do not consent to assignment of a magistrate judge for trial.

4.      Settlement Possibility:  Plaintiff believes that mediation may prove fruitful in this matter. Defendant doubts that mediation would be fruitful at this time, but is willing to participate.

5.      Alternative Dispute Procedures:  Plaintiff believes that alternative dispute resolution in the form of mediation may prove fruitful in this matter.  Defendant doubts that mediation would be fruitful at this time, but is willing to participate.

6.      Dispositive Motions:  The parties believe that any dispositive motion should be filed  no later than 60 days following the close of discovery, that any opposition to that motion should be filed within 45 days of the filing of the motion, and that any reply should be filed within 30 days of the filing of the opposition.

7.      Initial Disclosures:  The parties agree that they should provide initial disclosures as required by Fed. R. Civ. P. 26(a)(1).

8.      Discovery.  Should mediation prove unsuccessful, the parties request 180 days following the close of mediation to complete discovery.  The parties agree to limit the number of interrogatories to 25 per side.  The parties agree to limit the number of depositions to 10 per side.

9.      Experts: The parties agree that the requirements of Fed. R. Civ. P. 26(a)(2) should not be modified.  Plaintiff agrees to name his experts and provide the Expert Report(s) within sixty (60) days following the initial scheduling conference.

10.    Class Action Procedures:  Not applicable.

11.    Bifurcation of Discovery or Trial:  The parties do not believe that bifurcation of this

matter is necessary.

12.    Proposed Date for the Pretrial Conference: The Plaintiff believes that a pretrial

conference should be scheduled at the initial scheduling conference.  Defendant believes that a

pretrial conference should be scheduled following the Courts' ruling on dispositive motions.

13.    Trial Date: The parties agree that, if necessary, a trial date should be set at the pretrial

conference.

The parties hereby certify that all items required to be discussed by Rule 26(f) and LCvR 16.3(c)

were addressed.

Respectfully submitted,

_____
Jimmy A. Bell, Esq. (Bar No. MD 14639)
Law Office of Jimmy A. Bell, P.C.
9610 Marlboro Pike
Upper Marlboro, MD  20772
(301) 599-7620
(301) 599-7623 (Fax)
jimbellesq@aol.com
Counsel for Plaintiff


_____
Rhonda C. Fields
Assistant United States Attorney
United States Attorney=s Office
555 Fourth Street, NW
Washington, D.C. 20530
202-514-6970

Counsel for Defendant